## James D'Avella *vs.* Theresa McGonigle & another.[1]

Suffolk. May 6, 1999. - June 25, 1999.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Divorce and Separation,* Child support, Modification of judgment. *Parent and Child,* Child support. *Statute,* Construction.

The record of a proceeding on a complaint to modify a child support order did not support a claim that, due to his incarceration for a seven-year period, it was impossible for the father earlier to have filed and pursued a complaint for modification, and G. L. c. 119A, § 13 (*a*), in any event, barred any retroactive modification of the support order in question. [821-823]

Complaint for divorce filed in the Suffolk Division of the Probate and Family Court Department on December 8, 1986.

A complaint for modification, filed on April 2, 1997, was heard by *Anthony R. Nesi,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Beverly Coles-Roby,* Assistant Attorney General, for the Department of Revenue.

*Cathy A. Marino* for the plaintiff.

Ireland, J. We are asked to recognize impossibility of performance as an exception to the statutory prohibition against the retroactive modification of support orders found in G. L. c. 119A, § 13 (*a*). We conclude that the statute as written does not provide such an exception, and decline to establish one. Consequently, we affirm the ruling of the Probate and Family Court judge.

### I

James D'Avella (father) and Theresa McGonigle (mother) were married in 1981. They had one child, who was born in 1983. In 1986, the mother filed a complaint for divorce. On

---

[1]The child support enforcement division of the Department of Revenue.

December 7, 1987, a temporary order was entered requiring the father to pay $85 per week in child support. On July 21, 1988, a judgment of contempt was issued ordering the father to pay $125 per week, $85 of which was for child support and $40 to be applied to an accrued arrearage of $3,560. A judgment of divorce nisi was issued on August 29, 1988, in which the father was ordered to pay $85 per week in child support. On November 23, 1988, a second contempt judgment was issued ordering the father to pay $110 per week in child support, $10 of which to be applied to the accrued arrearage, which then totaled $5,055.

The father pleaded guilty to Federal charges of possession of a controlled substance with the intent to distribute and was incarcerated in Federal prison from August, 1989, until September, 1996. In March, 1997, the father filed a complaint for modification seeking to lower his weekly support payments and to modify retroactively the arrears which had accrued while he was incarcerated. The parties stipulated that the father owed $33,300 to the mother, and $15,755 to the Department of Transitional Assistance (department). The parties further stipulated that, of these amounts, $32,200 of what was owed the mother, and $4,600 of what was owed the department accrued while the father was incarcerated.

A trial on the father's complaint was held on October 24, 1997. The judge refused to abate the arrearage,[2] and found that the father was liable to the department for $15,755.07, and to the mother for $33,300. The father appealed, and we transferred the matter to this court on our own motion.

## II

Child support obligations become judgments by the operation of law "on or after the date [they are] due." G. L. c. 119A, § 13 (*a*).[3] The Legislature has explicitly prohibited the retroac-

---

[2]The judge opined that the father had "established a case of impossibility of performance" and he would, therefore, have abated the arrears but G. L. c. 119A, § 13 (*a*), barred him from doing so.

[3]The relevant statutory language reads in full: "Any payment or installment of support under any child support order issued by any court of this commonwealth or by a court or agency of competent jurisdiction of any other state shall be on or after the date it is due, a judgment by operation of law, with the full force, effect, and attributes of a judgment of this commonwealth including the ability to be enforced; shall be entitled as a judgment to full

tive modification of these judgments. *Id.* See *Smith-Clarke* v. *Clarke*, 44 Mass. App. Ct. 404, 405 (1998). The prohibition against the retroactive modification of child support obligations is clear and unequivocal. Such modifications "shall not" be allowed "except with respect to any period during which there is pending a complaint for modification, but only from the date that notice of such complaint has been given." G. L. c. 119A, § 13 (*a*).

The father argues that, due to his incarceration, it would have been impossible for him to pursue a complaint for modification, and, therefore, retroactive modification is warranted. This argument is without merit. The father's impossibility argument rests on the premise that he would have pursued a complaint for modification earlier if he could have. The facts, however, do not support this proposition. Before entering prison the father was not restrained from pursuing a complaint for modification in the manner he claims he was once he was incarcerated. The judge specifically found that the father was fully aware of his child support obligations prior to starting to serve his sentence but made no effort to have those obligations modified.[4] Moreover, once imprisoned he could have attempted to file, pro se, a complaint for modification with the court. Indeed, the father was out of prison for six months before he brought his complaint for modification, and then it was brought only after his bank account was seized.[5]

Even if the father could establish impossibility, the statute is clear that such retroactive modifications "shall not" be allowed. G. L. c. 119A, § 13 (*a*). The carving out of any exceptions to this clear mandate is for the Legislature, not the judiciary.[6] Where the language of a statute is plain, it is "the sole function

---

faith and credit; and . . . shall not be subject to retroactive modification except with respect to any period during which there is pending a complaint for modification, but only from the date that notice of such complaint has been given . . . ." G. L. c. 119A, § 13 (*a*).

[4]"Father's claim that he never received notice of his child support obligation while in prison is not credible given that he was aware of several child support orders and contempt judgments for arrears issued against him before he was incarcerated. . . . Father never attempted to file a Complaint for Modification of his child support obligation while he was incarcerated."

[5]In his brief, the father argues that it was this seizure which made him aware of his arrearages. The judge, however, found that the father was aware of his obligations before he was incarcerated. See note 4, *supra.*

[6]Had an action for contempt been brought against the father, he would have been able to raise impossibility as a defense. But within the context of a

of the courts . . . to enforce it according to its terms." *Boston Neighborhood Taxi Ass'n* v. *Department of Pub. Utils.*, 410 Mass. 686, 690 (1991), quoting *Massachusetts Community College Council MTA/NEA* v. *Labor Relations Comm'n*, 402 Mass. 352, 354 (1988).

The father also suggests that, if an action for enforcement had been brought while he was incarcerated, a court would have found him unable to pay. It is the father's position that, in reliance on this supposed fact, the mother and the Department of Revenue elected not to pursue the matter in order to allow the arrearage to increase, and, therefore, this court should reverse the judge's finding that the father is liable for those amounts. No authority is put forth to support this argument. It appears that the father is attempting to argue that laches should bar enforcement of the accrued judgments. Regardless of whether laches is appropriately used in the manner sought by the father, the defense of laches is unavailable in a case such as this. See G. L. c. 119A, § 13(*a*) (overdue support payments are judgments by operation of law).

### III

The judge's ruling that § 13 (*a*) bars retroactive modifications of support orders was correct, and therefore the ruling is affirmed.

*So ordered.*

---

modification action, impossibility does not provide an exception to the prohibition against the retroactive modification of support obligations found in § 13 (*a*).